NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

FRANCES MARKIEWICZ, PETITIONER, v. INTERNATIONAL
MILK CO., INC., RESPONDENT.

Decided December 23, 1940.

For the petitioner, *Joseph V. Fumagalli* (by *Edwin J. O'Brien*).

For the respondent, *James J. Skeffington*.

\*     \*     \*     \*     \*     \*     \*

From the undisputed facts as developed by the evidence in this case, it appears that the petitioner's decedent, Antoni Markiewicz, was regularly employed by the respondent as an engineer in charge of its boiler room; that his wages were $40 per week; and that he met with an accident which arose out of and in the course of his employment on September 9th, 1938, when he was engaged in assisting several other workers lifting a drum containing a chemical compound and weighing several hundred pounds. He was lifting it onto a hand truck and while doing so he felt something snap in his lower abdomen and he thereupon slipped forward or backward, as

I recall the testimony, causing the drum to strike him in the chest. The respondent does not deny the occurrence. It further appears from the evidence that the petitioner's decedent died on December 22d, 1938.

The vital issue in controversy is whether or not the accident, as I have just related, caused or contributed to Markiewicz's death. The question is largely one of medical opinion and for that reason the witnesses produced by the respective parties have been more or less limited to medical experts. The only lay witnesses I recall are Theodore MacDonald and Victor Schaefer, co-workers, who gave support to the petitioner's case in establishing proof of the accident.

Dr. Canio Cestone, who was produced by the petitioner and who was the family physician of the decedent for a period of four years prior to the accident, expressed the opinion that the accident contributed to the death of Markiewicz, which took place on December 22d, 1938, in that it aggravated the chronic diseases with which he had for a long time been a sufferer, namely, an auricular heart condition and a cirrhosis of the liver.

In a similar vein Dr. Max Kummel, also appearing on behalf of the petitioner, expressed the view that there was a direct causal relation between the accident and death; in that the pre-existing diseased conditions were aggravated and accelerated by the accident, thereby hastening his death.

On the other hand the respondent produced Dr. Arthur Masters and Dr. Otto Lowy, who took the opposite view. Both doctors expressed the opinions that the accident played no part either as a causative or aggravating factor; and that the death of petitioner's decedent resulted from a natural consequence of the diseases themselves and bore no relationship whatever to the accident. It seems that Dr. Masters' opinion was based primarily upon the fact that too long a time intervened between the accident and death. On cross-examination he answered counsel's question to the effect that if death had occurred within a period of hours or a day or so after the accident, possibly then there might be some causal relationship between the accident and the death, but that since it was a period of months he went on record to take the opposite view to that taken by the petitioner's doctors.

Dr. Lowy expressed a similar opinion that there was no causal relationship between the accident and death, because, as he testified, if there had been any aggravation due to the lifting event or strain upon these pre-existing diseases, death would have ensued the same day or the day after, and furthermore that the decedent would not have been able to resume work the second day following the accident.

Of course, the relative weight to be accorded the testimony of a medical expert has always been the subject of much controversy. I believe the rule to be, not alone here, but in all courts, that a treating physician who is acquainted with the patient's condition, not only on the day of the accident, but prior thereto, and all during the course of treatment following the accident, is in a better position to express an opinion as to cause and effect than mere medical experts, particularly where, as here, the experts have never seen nor examined the man who is a subject of their expert opinion. In this case neither Dr. Masters nor Dr. Lowy ever saw the decedent during his lifetime and accordingly based their opinions upon hypothetical questions propounded to them. Therefore, in weighing the medical testimony and in approaching this case for a logical conclusion, I must go into the factual situation which existed prior to the day of the accident, as well as the circumstances following the accident and up to the date of death.

I would be somewhat inclined to agree with the opinions expressed by Dr. Masters and Dr. Lowy if Markicwicz, on the day of the accident, had continued at his work and had complained of little or no physical distress and had worked uneventfully thereafter and then, for the first time wound up with these conditions several months later. Under such circumstances there would be little doubt, if any, in my mind but that the diseases themselves ran their natural course and terminated in death. However, there is nothing in this case to indicate that the decedent was not immediately incapacitated after the accident. True, he went back to work the second day following the accident in spite of his double herniæ and abdominal distress, but his work was sporadic, and he was not able to perform his regular tasks and had to quit a short

time later. His incapacity began shortly after the occurrence and his condition continued to grow progressively worse until it ended in his demise on December 22d, 1938.

I cannot accept the opinion of the respondent's experts that, because Markiewicz did not die the same day or the next day following the mishap, there is no relation of cause and effect between the accident and death. The evidence indicates that there were immediate complaints and a complete bridging of symptoms from the very moment of the accident down to the day of his death. The evidence in this case establishes a series of connective events indicating very plainly that from the date of the accident to the day of his death there was a gradual downgrade decline in his health.

The doctrine of aggravation of a diseased bodily condition by trauma is well recognized in this and other jurisdictions as constituting a compensable injury by accident within the purview of the Workmen's Compensation act. In the leading case of *Geisel* v. *Regina Co.*, 96 *N. J. L.* 31; 114 *Atl. Rep.* 328, it was held "that death may be found as having been caused by an accident, although there was a diseased bodily condition prior to the injury, without which death would not have ensued, where the undeveloped and dangerous conditions are set in motion producing such result."

If a diseased condition exists at the time of an accident, and the accident accelerates the disease, such acceleration is an injury by accident under the act. See *Voorhees* v. *Smith Schoonmaker Co.*, 86 *N. J. L.* 500; *Bernstein Co.* v. *Kelly*, 114 *Id.* 500; 177 *Atl. Rep.* 554; *Graves* v. *Burns, Lane & Richardson*, 10 *N. J. Mis. R.* 667; 160 *Atl. Rep.* 399; *Lundy* v. *Geo. Brown & Co.*, 93 *N. J. L.* 107; 106 *Atl. Rep.* 362; *VanMeter* v. *E. R. Morehouse, Inc.*, 13 *N. J. Mis. R.* 558; 179 *Atl. Rep.* 678; *Matthews Construction Co.* v. *Ranallo*, 13 *N. J. Mis. R.* 878; *affirmed (Court of Errors and Appeals)*, 117 *N. J. L.* 148; 187 *Atl. Rep.* 372; *Dougherty* v. *Miller*, 14 *N. J. Mis. R.* 229; 183 *Atl. Rep.* 904; *affirmed, (Court of Errors and Appeals)*, 117 *N. J. L.* 454; 189 *Atl. Rep.* 137.

If it be contended that a workman must be in normal health as a condition precedent to recover compensation, the act

would then be limited in its application to those in robust health; but the act, however, was intended to apply equally to those who may be in a subnormal state of health. I feel that Mr. Justice Perskie, in *Bernstein Co.* v. *Kelly,* 114 *N. J. L.* 500; 177 *Atl. Rep.* 554, very aptly enunciated the apposite rule when he stated "until such time as it may be provided to the contrary, by proper authority, the beneficent provisions of the act must and shall be extended alike to the weak and sick as well as to the strong and able, so long as those of either class, coming under the provisions of the act, sustain a compensable accident." And upon affirmance by the Court of Errors and Appeals (*Bernstein Co.* v. *Kelly,* 115 *N. J. L.* 500; 180 *Atl. Rep.* 832), the court gave further expression to this rule by saying, "suffice it to say that an accidental strain of a heart, even though the heart was previously weakened by disease, may be a compensable injury under our statute when as in this case, the accident arose out of and in the course of the employment."

As I view the medical testimony in the present case it seems that the opinions of the respondent's experts were predicated entirely upon a hard and cold set of facts set forth in a hypothetical question. Their answers thereto were in the negative as to whether any relationship existed between the accident and death. While I have the greatest respect for both Dr. Masters and Dr. Lowy, the former being a renowned cardiologist and internalist and the latter being a well known pathologist and diagnostician, I do not believe their opinions carry the same weight as the petitioner's experts, one of which was the attending physician. On the other hand, the petitioner produced the treating physician, whose opinion was to the opposite effect, that is, that the accident brought about a decided change in the decedent's health and caused an aggravation of these old diseases which hastened his death. In assigning reasons for his opinion, Dr. Cestone testified that following the accident various symptoms appeared for the first time, to wit—ascites, or fluid in the abdomen, anasarca or dropsy, and difficulty in urination (nephritis); that the edematous condition of both legs was first noticed by the doctor shortly after the accident, all of which indicated that

the accident had had a harmful influence upon these diseases. It does not require any undue stretch of one's imagination (although both respondent's doctors had considerable difficulty on the witness stand in giving their answers with considerable hesitancy) to conclude that a man in decedent's state of health prior to the accident and who meets with an accident such as the evidence discloses in this case, is by far in a more vulnerable state to withstand the effects of trauma than a man who is in a normal state of health.

It seems to me that the proofs in this case establish a causal relationship between the accident and death. We begin with a man in a poor state of health who suffers with heart and liver disease and who meets with an accident which in this particular case consists of a physical overact or strain; and it follows without much argument that a strain sufficiently severe enough to cause a double inguinal herniæ would likewise be sufficient enough to cause a strain upon other abdominal organs, particularly where those organs are already below par.

\*        \*        \*        \*        \*        \*        \*

JOHN J. STAHL,
*Deputy Commissioner.*